THE STATE OF CONNECTICUT *vs.* PETER BRAUNEIS.

Third Judicial District, New Haven, January Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

It is within the discretion of the court to determine whether separate trials shall be allowed to persons jointly accused. Ordinarily justice is better subserved if they are tried together; but where the defenses are antagonistic, or where evidence will be introduced against one which is inadmissible against the other or others, or where, for any other reason, it appears that a joint trial will probably be prejudicial to the rights of one or more of them, a separate trial will be granted when properly requested.

Upon a prosecution for assault with intent to rape, the testimony of *B*, one of the accused, was contradicted in a trifling, immaterial particular by a witness called in behalf of the other. *Held* that this

The State *v.* Brauneis.

could not have injured *B*, especially as the jury were cautioned not to regard the testimony of this witness as evidence against him.

The testimony of a witness as taken on the preliminary hearing, because of her absence through illness, was offered in behalf of *K*, one of the accused, and the State made no objection to its being read; *B*, however, did object, upon the ground that it contradicted his own testimony and that he was entitled to be confronted by the witnesses against him. The court admitted the testimony in behalf of *K*, but instructed the jury then and later in its charge, that it must not be taken or considered by them as evidence against *B*. *Held* that inasmuch as the testimony was not offered against *B* and the State was not permitted to use it against him, his constitutional right had not been violated by its reception, although the objection would have been well taken had the evidence been received and used for that purpose.

The saying that "rape is an accusation easy to be made, hard to be proved, and harder to be defended by the party accused, though ever so innocent," is a statement of fact rather than of law, and is sometimes used by way of a word of caution to the jury in prosecutions for that crime. The accused is not, however, entitled as a matter of law to an instruction to this effect, nor is its omission a ground of error where the assault itself is practically admitted as well as the nonconsent of the woman assailed, and the jury are fully and correctly instructed as to the elements of the crime and the nature of the intent to be proved by the State in order to warrant a conviction.

Having offered evidence to prove that his reputation for chastity was good, the defendant *B* requested the court to instruct the jury that if they found this evidence came from respectable witnesses and was strongly in his favor, it fortified the presumption of innocence and in a doubtful case should turn the scale in favor of the accused. *Held* that this request was properly refused, inasmuch as the instruction, if given, would have tended to lead the jury to consider the evidence of *B's* character or reputation as an independent fact, apart from the other evidence, to treat the legal presumption of innocence as evidence, and to regard the character and standing of the witnesses, rather than the fact of the defendant's chastity itself, as turning the scale in his favor.

The presumption of innocence accorded by law to an accused has no evidential force, but merely casts upon the State the burden of proving his guilt.

A reputation for chastity borne by one accused of an assault with intent to rape is a fact or circumstance which he is entitled to have weighed and considered by the jury in connection with all the other evidence in the case.

The truthfulness of statements made by an accused after his arrest,

and his motive in making them, are to be considered by the jury in determining whether they were protestations of innocence, or an éffort upon his part to divert suspicion from himself by implicating others; and therefore a request to charge which removes that inquiry from the consideration of the jury is improper and should be denied.

While an instruction that the State is bound to prove beyond a reasonable doubt all the essential elements of the crime charged, ordinarily involves proof of the presence of the accused at the scene of the crime, nevertheless where an alibi is asserted and relied upon as a defense to a charge of assault, the accused is entitled to have the jury specifically instructed that the evidence offered by him upon that subject is to be considered by them in connection with all the rest, in determining whether he was present, and that if a reasonable doubt upon that point exists, it is their duty to acquit.

The defendant having offered evidence that one W was one of the assailants, the latter may properly be called in rebuttal by the State to show that he was not present at the assault.

Evidence which might have been properly offered in chief may, in the discretion of the trial court, be received in rebuttal.

Upon a charge of assault with intent to rape, the defendant's belief that the complainant had frequented improper houses is immaterial; as is also his belief that a certain saloon was kept open after the lawful hours.

Upon such a charge the complainant's habits as to intoxication, and the defendant's knowledge thereof, are irrelevant and immaterial.

Argued January 20th—decided March 8th, 1911.

INFORMATION for an assault with intent to commit rape, brought to the Superior Court in Fairfield County and tried to the jury before *Curtis, J.;* verdict and judgment of guilty, and appeal by the accused. *Error and new trial ordered.*

*Homer S. Cummings,* for the appellant (the accused).

*Stiles Judson,* State's Attorney, for the appellee (the State).

THAYER, J. The defendant and one Keating were jointly informed against for attempted rape upon Mrs. Meath in the town of Danbury. The assault

The State *v.* Brauneis.

occurred at about half past one in the morning. For about two hours prior to one o'clock the complainant had been on the premises where the defendant kept a saloon. At about one o'clock she left to go home, and he accompanied her. They went through South Street to Main Street, on the corner of which one Dougherty kept a saloon. Here Mrs. Meath left the defendant to visit, as she said, Mrs. Dougherty. She went to the front door and found it fastened, and then went around to the rear door. These facts were undisputed. The State claimed to have proved that, finding the rear door at Dougherty's fastened, she turned to leave, when she was seized by the defendant and Keating and carried into another street, where the assault was made upon her. The defendant testified that when Mrs. Meath left him at the corner of Main Street, he went immediately to his room, where he was found and arrested at three o'clock. He also testified that in going through South Street to Main Street he and Mrs. Meath did not sit down or stop. The complainant, when assaulted, made outcry and raised the neighbors, who went to her assistance, when her assailants ran away. She at once named the defendant as one of her assailants, and has been constant in her accusation. She was corroborated as to this fact by Dougherty, who testified that he saw her seized on his premises by the two accused persons and borne away. Keating's defense was that he was too drunk on the night in question to know what he did or to form the criminal intent alleged, and that the complainant was too much intoxicated to know who her assailants were, and was mistaken in her identification of him as one of them.

The defendant asked for a separate trial, which was refused. The parties were tried together, and both were convicted. The court's denial of the defendant's motion for a separate trial is assigned as error.

VOL. LXXXIV—15

Whether a separate trial shall be allowed to parties jointly indicted is within the discretion of the court. Ordinarily justice is better subserved where the parties are tried together. But cases arise where the defenses of the different parties are antagonistic, or where evidence will be introduced against one which will not be admissible against others. Where from the nature of the case it appears that a joint trial will probably be prejudicial to the rights of one or more of the parties, a separate trial should be granted when properly requested.

It does not appear that the defendant, when moving for a separate trial, presented any reasons why a joint trial would be prejudicial to him. The only respect in which he now claims to have been injured by it is that the testimony of one Egan, which was introduced in behalf of Keating, tended to contradict in one particular the testimony of the defendant. It is claimed that by reason of this contradiction the jury may have discredited his entire evidence. The point of difference between his testimony and that of Mrs. Egan was that she stated that in passing from his place through South Street to Main Street the defendant and Mrs. Meath sat down upon some stone steps. The State made no claim that the parties stopped or sat down in South Street, and the fact was immaterial to the State's case or the defendant's defense. Besides, in receiving the Egan testimony, the jury were cautioned that they were not to consider it as evidence against the defendant. It is apparent that he could not have been injured by its reception. There is nothing in the record to indicate that he was in any way injured by the court's refusal of his motion for a separate trial. So far as appears, the court's discretion was properly exercised in denying his motion.

Mrs. Egan had testified upon the preliminary hearing in the City Court, but was ill at the time of the trial

in the Superior Court and unable to be present. Keating's counsel in his behalf offered her testimony as given in the City Court. The State did not object to this, but Brauneis objected to its being read upon the ground that it contradicted his testimony, and that he was entitled to be confronted by the witnesses against him. The court admitted the evidence in behalf of Keating, but instructed the jury at the time of its reception, and again in the charge, that it must not be taken or considered by them as evidence against Brauneis. The admission of the testimony under these circumstances is made the ground of an exception by the defendant.

Had the evidence been offered by the State against Brauneis, or against both defendants, the objection to it would have been properly taken. The witness being alive, the State would have been required to produce her in court to testify, so that the defendant might be confronted by her and given an opportunity to cross-examine her. But the State did not offer the testimony, and was not permitted to use it against the defendant. And Keating did not offer the testimony against the defendant. Mrs. Egan was in no sense a witness against the defendant, and his constitutional right to be confronted by the witnesses against him was not invaded by the court's reception of the evidence in behalf of his codefendant. The facts testified to by Mrs. Egan were admissible in favor of Keating, and, as the State did not object to her testimony as given in the City Court being read to the jury, it was properly admitted.

The defendant requested an instruction that "it is the settled law of this State that rape is an accusation easily to be made, hard to be proved, and harder to be defended by the party accused, though ever so innocent." This language, found in Swift's Digest, Vol. 2, p. 294, and in other authorities, is a statement of fact,

rather than of law, and is doubtless true in most cases where rape is charged. The language is sometimes used in charges in such cases, and very properly, to preface a caution to the jury to guard themselves against prejudice toward the accused arising from the detestable nature of the crime, and to weigh the evidence on both sides with a view to the difficulties of the proof. The requested instruction, unless coupled with some such caution (which was not requested), would have been worse than useless, because it would state no proposition of law which could aid the jury. In the present case there was no need of such a caution, even if the request can be taken to have suggested one. The charge here is not rape. It does not appear to have been disputed on the trial that the complainant was assaulted by some one with intent to ravish her. The question of consent, frequently present in rape cases, was absent here, and the complainant was corroborated in her testimony by eyewitnesses of the assault. The jury were fully instructed as to the nature of the intent to be proved by the State to warrant a conviction.

The defendant offered evidence tending to prove that his character for chastity was good. He requested the court to instruct the jury that "evidence of the defendant's character for chastity is admitted with great propriety in all cases (criminal) where that precise characteristic is questioned, and when the witnesses called in support of defendant's reputation are respectable, and strongly in his favor, it fortifies the presumption of innocence, and in doubtful cases should turn the scale in favor of the defendant, whether said doubt exists in consequence of the prosecution resting upon circumstantial evidence, or of upon the direct evidence of witnesses whose reliability from their connection with the case is open to suspicion." This instruction was properly refused. Evi-

dence of the character of an accused for chastity would
not fortify or affect the presumption of innocence with
which the law surrounds him.   Such presumption has
no evidential force; it merely casts upon the State the
burden of proving the guilt of the person accused.
*State* v. *Smith,* 65 Conn. 283, 285, 31 Atl. 206.   The fact,
if proved, that the defendant's character for chastity
was good would have force as evidence.   It should not
be weighed and considered by the jury, therefore, as an
independent fact, which would increase the legal pre-
sumption of innocence, but as a fact to be considered by
them in connection with all the other evidence in the
case, from which inferences of fact as to the defendant's
guilt or innocence might be drawn.   Whether it would
or should "turn the scale" in his favor would depend
upon the nature of the other evidence and facts in the
case.   If, considered in connection with the rest of the
evidence, it raised, or there remained in the minds of the
jury, a reasonable doubt of the defendant's guilt, they
were bound to acquit him, and they were so told.   The
requested instruction would have told the jury that,
when evidence as to the defendant's chastity comes
from respectable witnesses, "it should in doubtful cases
turn the scale in his favor."   The character of the wit-
nesses, rather than the establishment of the fact of
chastity, is thus made to turn the scale in the defend-
ant's favor.   The tendency of the instruction was to
lead the jury to consider the evidence of character dis-
connected from the other evidence, to treat the legal
presumption of innocence as evidence, and to consider
the character of the witnesses to the fact, rather than
the fact itself, as turning the scale in the defendant's
favor.   If given, it would have tended to confuse and
mislead the jury, rather than to assist them, in reaching
a true verdict.

The defendant made a statement after his arrest, and

after he had been informed of the charge against him, concerning his connection with Mrs. Meath and when he left her, in which he identified the hat found near the place of the assault as Keating's and told of his having seen Welsh with Keating near Flanagan's, not far from Dougherty's, just after leaving Mrs. Meath, and suggested that Keating be closely questioned by the officers. The court was requested to instruct the jury that these constituted protestations of innocence, that they served to repel the inference of guilt, and that they could be treated by the jury as direct evidence of innocence. If his statement as to Welsh was not true, as claimed by the State, but was an attempt to implicate Welsh in the crime as the associate of Keating, and thus escape himself, the statement could hardly be characterized as a protestation of innocence, or be direct evidence of innocence. The instruction would remove from the jury the consideration of the truthfulness of the statement and the defendant's motive in making it. The request was improper, and properly refused.

There were three requests as to the defendant's attempted alibi. Two of these were properly refused as calling for a statement by the court as to the weight of the evidence. The other was as follows: "That if the jury from all of the evidence in the case are unable to find that the alibi offered by the defendant, Brauneis, is absolutely true, yet if upon all of the evidence in the case the jury entertain a reasonable doubt, as to the presence of the defendant, at the time the alleged assault was committed, in consequence of the doubt raised by such alibi evidence, then the jury should acquit the defendant, Brauneis, because the burden is upon the State to show, beyond a reasonable doubt, that the defendant was present, at the time of the commission of the alleged assault, and as bearing upon that question, it is the duty of the jury to consider all of the

The State *v.* Brauneis.

evidence offered by the defendant in support of the alibi. And if upon all of the evidence, the jury entertain a reasonable doubt, as to his presence at the time of the alleged offense, it is as a matter of law their duty to acquit the defendant, Brauneis." We think that this instruction, in substance, should have been given. The defendant had attempted to establish an alibi. If, upon a fair consideration of the entire evidence, the jury entertained a reasonable doubt as to the defendant's presence at the scene of the crime, it was their duty to acquit, although they were not satisfied from the "alibi evidence" that he was elsewhere. While it is true that the defendant's presence at the place of the assault was an essential element in the State's case, and the court told the jury that to convict the State must prove all the essential elements of its case beyond a reasonable doubt, this instruction did not fully meet the situation. In effect, evidence of alibi is merely rebuttal of the State's evidence. But an alibi is spoken of in the books and by courts as a defense. *State* v. *Schweitzer*, 57 Conn. 532, 540, 18 Atl. 787. The burden is upon the accused in the first instance to produce evidence in its support. Cases are found where it is held that such defense must be established beyond reasonable doubt; others where it is said that a preponderance of the evidence is required. In this State, whenever the defense is so far proved that upon the whole evidence a reasonable doubt as to the guilt of the accused is caused, he is entitled to an acquittal. *State* v. *Schweitzer*, 57 Conn. 532, 541, 18 Atl. 787. But in the absence of an instruction by the court, and in the presence of conflicting claims of the parties as to whether the alibi had been established, the jury might lose sight of the fact that this evidence was to be considered with the rest upon the question of reasonable doubt. They would be quite likely to do so. The court's charge gave them no light upon the matter. It

may be that a charge like the one given would be held sufficient, in the absence of a request relating to the matter. But the defendant having requested a proper instruction, the alibi being his chief reliance in the case, was entitled to have the jury specifically instructed that this evidence was to be considered by them in connection with all the rest, in determining whether the defendant was present at the assault, and that if they had reasonable doubt upon that matter they should acquit.

The defendant having testified that shortly after separating from Mrs. Meath he saw Welsh and Keating near Dougherty's, and having offered certain circumstantial evidence to show that Welsh was one of the assailants of Mrs. Meath, the State in rebuttal called Welsh as a witness to contradict the defendant, and to prove that he was not with Keating. This evidence was objected to upon the ground that, "if offered to contradict any statements made by Brauneis upon his arrest, such testimony should have been offered by the State upon its case in chief." The evidence was received, and the exception which was taken to the ruling is now pursued upon the ground that the evidence was not rebuttal. The defendant at the time of his arrest, or shortly after, had made a statement of the fact testified to by him concerning Welsh. The evidence was offered in rebuttal of his testimony, and tended directly to contradict that testimony. The State was not bound, in putting in its case in chief, to show that no other men than the defendant and Keating were in the neighborhood of the assault. The complainant identified them as her assailants. The fact that the State had knowledge that the defendant had attempted, or would attempt, to implicate Welsh in the crime as Keating's companion did not cast upon it the burden of proving in chief that he was not implicated. The evidence was properly reserved for and received as rebuttal. But if

the evidence was not properly rebuttal, it lay within the court's discretion to receive it in rebuttal, although it might have been properly offered in chief. *State* v. *Laudano*, 74 Conn. 638, 650, 51 Atl. 860; *State* v. *Boylan*, 79 Conn. 463, 469, 65 Atl. 595. The testimony of Mrs. Meath, recalled in rebuttal by the State to testify that she was acquainted with Welsh, and that he was not one of her assailants, and that she did not see him on the evening of the assault, was properly admitted for the same reason.

The defendant as a witness was asked by his counsel whether, prior to the time of the assault, he believed or had heard that Mrs. Meath frequented two different houses, naming them. These questions were properly excluded. If we assume that the houses named were improper ones for a woman to frequent (which does not appear), the defendant's belief that the complainant frequented them would not be material to the issue on trial. His belief did not tend to prove the essential fact, which would be that she actually frequented the houses. For the same reason the defendant's belief that Dougherty kept his saloon open after the hours fixed by law was immaterial, and the question calling for it was properly excluded. The complainant's habits as to intoxication were not an issue, and the defendant's knowledge of her habits in that regard were immaterial and properly excluded. The question asked of the complainant's husband upon cross-examination, namely, whether he had seen his wife intoxicated before, was properly excluded as not proper cross-examination.

The other errors assigned have not been pursued in the brief or upon the oral argument, and it is unnecessary to consider them.

There is error and a new trial is ordered.

In this opinion the other judges concurred.