STATE OF CONNECTICUT *v.* DONALD E. HUNT

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

518

Argued January 3—decided February 21, 1967

*James W. Marshall,* for the appellant (defendant).

*David B. Salzman,* assistant state's attorney, with whom, on the brief, was *George R. Tiernan,* state's attorney, for the appellee (state).

KING, C. J. The defendant, Donald E. Hunt, was charged with having committed the crime of rape on July 4, 1964, in North Haven, in violation of General Statutes § 53-238. He was represented by the public defender, pleaded not guilty and elected a trial by jury.

There appears to be no real dispute that between 10:30 and 11:30 of the night of July 4, 1964, Stephen D. Smith, of the North Haven police, came upon a Chrysler car parked along the side of a road in North Haven; that as Smith got out to check the Chrysler, a naked woman ran out of the woods screaming that she had been raped; that Smith radioed for assistance and in a few minutes was joined by another police officer, Hayes Gibson, Jr., who observed Hunt, naked, about 700 feet from the parked Chrysler; that shortly after 11 p.m. Ernest W. Barone, a police officer, was assigned to assist in a search for Cecil N. Doten, the brother-in-law of the complainant and one of two men who she claimed had tried to rape her; that Doten was found clothed only in a pair of trousers, admitted his identity, and was then placed under arrest. Some time later that night Doten gave a signed statement to the police regarding the incident with the complainant.

Although the record discloses only an information against Hunt, alone, it seems to be conceded that Doten was also separately informed against for rape, was represented by the same public defender, pleaded not guilty and elected trial by jury and that Hunt and Doten were jointly tried before the same jury. No question was raised at any time as to either the joint trial, or the joint representation by the public defender, of both Doten and Hunt.

In the course of the trial, Doten's statement was offered in evidence against Doten only. This statement was made and signed by him while he was in custody in the police station. At the trial, Doten claimed that his statement was inadmissible because (1) he made certain incriminatory statements in response to questions asked him prior to his being warned of his right to remain silent and to have counsel and (2) he was too intoxicated at the time to be able to give reliable or voluntary answers to any questions. On the trial, he denied the accuracy of the statement and testified in substantial accord with Hunt, each having chosen to take the stand.

The public defender necessarily was required to, and did, do everything possible to prevent the admission of the Doten statement and, in the course of his endeavors toward that end, subjected Barclay Bumsted, the detective who took the statement from Doten, to a searching and rigorous cross-examination. Doten himself testified in full support of his claims as to the inadmissibility of the statement. After a full hearing in the absence of the jury, the court found that the state had sustained its burden of proving the facts prerequisite to the admissibility of the statement. Thereupon, the court admitted the statement against Doten, only, and carefully, and repeatedly, instructed the jury

to disregard it completely as against Hunt. The trial thereupon continued uneventfully. Hunt was convicted of the crime charged, and Doten was convicted of the lesser, but included, crime of assault with intent to commit rape in violation of General Statutes § 53-239. The present appeal involves Hunt alone.

The basic claims in this appeal, which was taken by new counsel procured by Hunt himself, are two-fold. They are that, as soon as the court admitted the Doten statement against Doten only, it should, suo motu, and without request or suggestion from anyone, forthwith have accorded Hunt (1) a separate trial or (2) representation by separate counsel. Either action would necessarily have required a mistrial as to Hunt and a new trial as to him before a new jury.

Ordinarily, persons separately informed against should be tried separately, because they ordinarily have no connection with one another. And where the state claims that they should be tried together, it has the burden of justifying that procedure if seasonably called in question by counsel for an accused. Practice Book §§ 529, 530; *State* v. *McCarthy,* 130 Conn. 101, 104, 31 A.2d 921; *State* v. *Licari,* 153 Conn. 127, 130, 214 A.2d 900.

Under our law "joint indictments and separate indictments which can be consolidated should be treated alike". *State* v. *McCarthy,* supra, 103. In other words, the accused is entitled to a fair trial, and this right cannot be curtailed or circumscribed whether the state's attorney uses a separate information or a joint information. The basic test of the propriety of an order for a joint trial is whether it probably will be prejudicial to the rights of one or more of the parties, that is, "will probably result

in substantial injustice". *State* v. *Castelli*, 92 Conn. 58, 63, 101 A. 476; *State* v. *McCarthy*, supra; 5 Wharton, Criminal Law and Procedure § 1946. The matter lies in the sound discretion of the court, and, of course, the facts material to a proper exercise of discretion should be called to the attention of the court well in advance of actual assignment for trial. *State* v. *McCarthy*, supra, 105; note, 59 A.L.R.2d 841, 847, subdivision II.

Each of these two accused, although separately informed against, was charged with the crime of rape of the same complainant, at about the same time and place. Both had been in her company during several hours immediately preceding the alleged crime. Under these circumstances, it was proper for them to be tried together unless there was good reason why a joint trial would be likely to be prejudicial to one or the other or both accused. *State* v. *Brauneis*, 84 Conn. 222, 226, 79 A. 70; see Practice Book § 532. "Whether a separate trial shall be allowed . . . is within the discretion of the court. Ordinarily justice is better subserved where the parties are tried together. But cases arise where the defenses of the different parties are antagonistic, or where evidence will be introduced against one which will not be admissible against others. Where from the nature of the case it appears that a joint trial will probably be prejudicial to the rights of one or more of the parties, a separate trial should be granted when properly requested." *State* v. *Brauneis*, supra. As pointed out in *State* v. *Castelli*, 92 Conn. 59, 63, 101 A. 476, "[t]he discretion of the court is necessarily exercised before the trial begins [if a proper motion for separate trials is made], and with reference to the situation as it then appears . . . . The controlling question is

whether it appears that a joint trial will probably result in substantial injustice". This appears to be the general rule. Note, 54 A.L.R.2d 830, 833 § 3.

In the instant case, no motion was made at any time either for a separate trial or for separate counsel. As far as appears the court's attention was never directed to either matter, and it was never at any time called upon to exercise its discretion in either respect.

Hunt claims that the mere fact that Doten's confession was admitted against Doten, and to some extent implicated Hunt, automatically called for a mistrial as to Hunt and the continuation of the trial against Doten alone. The rule as to separate trials is not a mechanical rule of thumb as Hunt seems to claim. Frequently, evidence admitted for one purpose is inadmissible for another purpose and, if it is misused by a jury, in violation of a proper instruction from the court, could have a prejudicial effect. This may occur whether or not a joint trial is involved. Yet, it could hardly be claimed that such evidence could not be admitted at all because of its possible misuse by the jury in violation of a proper instruction. See, for instance, cases such as *State* v. *Hoyeson,* 154 Conn. 302, 308, 224 A.2d 735, and cases cited. Indeed, it is essential to any orderly trial that the jury be presumed, in the absence of a clear indication to the contrary, to have followed the instructions of the court as to the law, including any limitations on the use of evidence which has been properly admitted for a limited purpose. Hunt's claim would, if carried to its logical conclusion, make impossible a jury trial of many, if not most, cases, whether civil or criminal and whether involving single or multiple adverse parties. See *State* v. *Hoyeson,* supra.

There is strong authority for the proposition that where, as here, there is no motion for separate trials, and nothing is said to the court prior to trial on which it could exercise its discretion, there could not be error in a joint trial since the court would have made no ruling. See cases such as *State* v. *McCarthy,* 130 Conn. 101, 105, 31 A.2d 921. We have no occasion in this case, however, to decide that exceptional cases could never arise where, even without a motion for a separate trial, the accused would have been denied a constitutionally fair trial by his being jointly tried with a codefendant, because, in this particular case, it is apparent that the failure of the public defender to ask for a separate trial or separate representation was a considered and sound exercise of trial strategy calculated to be in the best interests of each accused.

The public defender was a lawyer of competence and experience in the defense of criminal cases. The only proper assumption is that he was fully familiar with our law, as already outlined, regarding the right of an accused to request a separate trial and that the granting of such a request lay in the court's discretion in the light of the situation presented to it; and that he was fully familiar with our law as to the right of an indigent accused to separate counsel "[w]hen for any reason, such as conflict of interest between two or more accused, there is any real question of the propriety or effectiveness of the public defender's acting for [two or more accused jointly]". *State* v. *Reid,* 146 Conn. 227, 234, 149 A.2d 698.

Since the public defender represented both Doten and Hunt, he undoubtedly was fully aware, long prior to trial, of the Doten statement and its contents. He was also undoubtedly fully aware that

the testimony of the two accused would be in substantial harmony, as it was. He may very well have known that the state's case against them was a very strong one in which the testimony of the complainant would receive much corroboration from the physical facts observed by the police. Indeed, photographs admitted as exhibits showed severe scratch marks on the left side of Doten's face and on the right side of his neck and on Hunt's nose. Photographs of the complainant showed bruises and abrasions on her face and left arm, on her right knee and on her back.

The testimony of the complainant was that both defendants hauled her out of the car and forced her down onto the grass; that Hunt held her while Doten attempted intercourse; that Doten knocked her temporarily unconscious with a blow to the head; that shortly thereafter she regained consciousness; that Hunt was interrupted, while having intercourse, by Doten's cry of warning of the arrival of the police; that both Doten and Hunt then ran; and that the complainant immediately rushed, screaming and naked, out to the police.

It is clear that the strength of the case against both accused was such that for both not to have testified would have been almost certainly fatal to any hope of the acquittal of either, and that their only real hope, so far as they had any, lay in both presenting the united front, which they did, against the complainant. Whether to object to a joint trial in the light of its probable advantage to each accused was a matter of trial strategy to be decided by trial counsel. Indeed, a separate trial might even have left one or the other to face the complainant alone, since there could be no assurance that the one not on trial, if called as a witness, would not

claim a privilege against self-incrimination as actually occurred in *Douglas* v. *Alabama,* 380 U.S. 415, 420, 85 S. Ct. 1074, 13 L. Ed. 2d 934.

The Doten statement materially differed from the testimony of Doten and Hunt on the stand largely in that it stated that Hunt had actually commenced intercourse with the complainant before he was interrupted by the arrival of the police and that the two had forcibly taken her out of the car and dragged her into a field. It is true that this statement implicated Hunt and, if credited, tended to negate the basic claims of both accused that neither of them had actually had intercourse with the complainant and that what had taken place had been with her acquiescence. But in the situation in which both accused stood, any possible harm from the statement, even to Doten, was far overbalanced by the gain to each from the joint confrontation of the complainant and the presentation of a united front against her before the jury. The testimony by Doten as to his intoxicated condition at the time the statement was made, together with the immoral actions which both accused claimed had taken place between themselves and the complainant with her acquiescence, might have caused the jury to entertain a reasonable doubt as to their guilt of the crime charged.

If the cases were to be tried at all, the course pursued by the public defender was certainly sound trial strategy. There was no conflict or antagonism whatsoever between the testimony of the two accused, and under the circumstances we find no prejudice resulted to either from the joint trial of both. On the contrary, we think each was benefited by it. The fact that they were convicted does not indicate, even from the vantage point of hindsight,

that the strategy adopted was not the best possible strategy from the point of view of each defendant.

What has been said largely disposes of the second basic claim of Hunt that the court, suo motu, should have appointed separate counsel to defend him as soon as the Doten statement was admitted against Doten. The only substantial reason suggested in support of the claim that there was a conflict of interest between Doten and Hunt, so as to require their independent representation, was that the Doten statement to some extent implicated Hunt and that, since the same attorney represented both accused, he could not cross-examine his own client, Doten, as to that statement. No claim is made that Doten's testimony on the stand was antagonistic to Hunt or to his testimony so as to warrant a general cross-examination of Doten on behalf of Hunt, or vice versa. Certainly, it was far more to the interest of Doten to keep out his statement, which was finally admitted against him only, than it was to Hunt's interest to keep out the statement which was not admitted or claimed to be admissible against Hunt. At the interlocutory hearing by the court on the admissibility of the Doten statement not only did the public defender call Doten to testify as to his intoxication and his claim concerning the belated warning given him about making the statement but he extensively cross-examined Bumsted, the officer who had taken the statement. Indeed, no stone was left unturned to exclude the statement.

Furthermore, we know of no theory under which Doten could have been cross-examined by an attorney representing Hunt only as to Doten's statement, which was neither admitted nor admissible against Hunt. Necessarily, it would constitute no part of the direct testimony against Hunt. *Mendez* v. *Dorman,*

151 Conn. 193, 198, 195 A.2d 561, and cases cited; see *State* v. *Brauneis,* 84 Conn. 222, 227, 79 A. 70; *State* v. *Rubaka,* 82 Conn. 59, 62, 72 A. 566; note, 33 A.L.R. 826; 3 Wharton, Criminal Evidence (12th Ed.) § 885, p. 292. Nor would an attorney representing Hunt, alone, have had any standing to demand the exclusion of Doten's statement as evidence against Doten alone. To state the proposition is to demonstrate its lack of merit. Neither *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923, nor *Douglas* v. *Alabama,* 380 U.S. 415, 420, 85 S. Ct. 1074, 13 L. Ed. 2d 934, holds that the right of confrontation and cross-examination, guaranteed in a state trial through the sixth and fourteenth amendments to the federal constitution, applies to testimony which is expressly excluded as to the complaining accused. See, for instance, *Douglas* v. *Alabama,* supra, 423. Indeed, the ratio decidendi of the *Douglas* case was that the jury were led to believe that the inconsistent statement of an alleged accomplice was evidence against Douglas.

In this connection, the case of *Glasser* v. *United States,* 315 U.S. 60, 72, 62 S. Ct. 457, 86 L. Ed. 680, seems also to be heavily relied upon by Hunt. We fail to see how the *Glasser* case strengthens Hunt's claim. Insofar as the *Glasser* case holds that it is the duty of the state to supply an indigent accused with competent and effective counsel, and, if necessary, separate counsel, it is in complete accord with the law of Connecticut. *State* v. *Reid,* 146 Conn. 227, 234, 149 A.2d 698. Beyond that, we see no similarity between the *Glasser* case and the present case. In the *Glasser* case, the accused himself, who had been an assistant United States district attorney (p. 69), told the court before the trial that he did not wish his counsel to be appointed to defend

Kretske, another of the defendants. Glasser's own counsel, prior to his court appointment to represent Kretske, also (p. 68) brought to the court's attention a possible conflict of interest in a representation of both Glasser and Kretske by the same counsel, and he questioned the wisdom of his attempting to act for both defendants. Notwithstanding all this, the court appointed Glasser's counsel to defend Kretske. A conflict of interest actually developed during the trial which affected, probably adversely to Glasser, his own attorney's conduct of his defense, both (pp. 72-74) in failing to object to evidence inadmissible as to Glasser but admissible as to Kretske and in failing to cross-examine one of the witnesses. Nothing of that type occurred here, for the reasons already pointed out. No inadmissible testimony was either offered or admitted against Hunt, nor was any permissible cross-examination as to Doten's statement omitted or curtailed.

The substantial harmony of the testimony of Doten and Hunt as to their activities with the complainant left no occasion for counsel for either accused to attack, by cross-examination, the testimony of the other accused. See 3 Wharton, Criminal Evidence (12th Ed.) § 885, p. 292. Indeed, any weakening of the testimony of either would have been prejudicial to both. Hunt's present complaint seems to be restricted to an inability of the public defender to cross-examine Doten as to his statement. Even aside from the basic fact that counsel for Hunt would have no right to cross-examine Doten as to the statement, nothing was left undone to exclude the statement and to weaken its force after its admission into evidence against Doten, only. No cross-examination could have elicited from Doten more favorable testimony for the exclusion of the

statement than that which he himself gave. Also, there was no doubt here that the jury were clearly instructed that the statement was inadmissible, and was not to be considered, against Hunt.

We are satisfied that there was no error in either of the two respects claimed and also that Hunt was well and effectively represented and was given a fair trial in the full sense of the word.

Although here the joint confrontation of the complainant and the united front which both accused presented against her proved unavailing to overcome the strength of the state's case, it gave, as we have pointed out, the only real hope of acquittal open to either Doten or Hunt. The public defender took the best possible course to serve the interests of each accused, not only when they are considered together, but also when each is considered separately.

Hunt's other claims require no discussion.

There is no error.

In this opinion the other judges concurred.