THE STATE OF CONNECTICUT *vs.* FRED KLEIN ET ALS.

First Judicial District, Hartford, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, JS.

A separate trial of two or more accused upon a joint indictment will be ordered where the defenses are antagonistic, or where evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of them.

In passing upon a motion for a separate trial, the trial court should ascertain by inquiry, if counsel do not develop it, the character of the State's evidence affecting one and not the rest of the accused, and then, in the exercise of a sound discretion,—reviewable only where so abused as to result in substantial injustice—should determine whether a joint trial will be prejudicial to the rights of any of the accused.

While ordinarily the fact that one of the accused has made a confession incriminating the others would be a good ground for granting a

The State *v*. Klein.

separate trial, yet even then a refusal of such trial is not neces-
sarily an abuse of discretion; and even where the trial court would
probably have granted the motion, had it before it all the evidence
of this character which was ultimately introduced, this court will
not order a retrial where it does not appear that the accused had
suffered substantial injustice by the refusal.

An opinion of guilt, formed from reading newspaper reports, does not
disqualify one from acting as a juror, provided it also appears
that no prejudice against the accused exists in the mind of the
reader, and that he can try and determine the case solely upon the
evidence submitted in court.

The question whether one is qualified to act as a juror is one of fact, to
be determined by the trial court in the exercise of its discretion;
and its determination will be reversed only in the exceptional
case of an abuse of this discretion.

An appellant who desires to have a finding corrected, in a case tried to
the jury, should proceed by motion in the manner prescribed by
General Statutes, § 5829, or by an application to rectify the appeal
under § 5836; for the method prescribed in § 5832, of having all
the evidence and rulings made a part of the record on appeal, is
adapted only to the correction of findings in cases tried to the court.

The sole purpose of a finding in a jury case, unlike that in a court case,
is to present a fair picture of the facts in evidence which each
party offered and claimed to have proved, so that the rulings and
claims of law made can be understood and properly applied.

There is no occasion for this court to correct findings of fact which, if
made, would not affect any ruling or claim of law relied upon by
the appellant.

Upon a prosecution of five defendants for the murder of an officer
guarding a warehouse, it appeared that the defendants' main pur-
pose was to steal silk from the warehouse, but there was also evi-
dence that each one had revolvers and were prepared to resist
interference. There was some conflict in the evidence as to whether
all the accused were present on the spot at the time of the shooting,
or whether some waited nearby with a motortruck and after learn-
ing of their discovery left without participating in the actual shoot-
ing. *Held* that a verdict of guilty in the second degree against all
was not against the evidence, since the jury could reasonably have
found from the evidence that all participated in a conspiracy in-
volving, among other purposes, that of resisting by shooting if
necessary anyone who interfered with their escape, and that there
was no abandonment of such purpose by any of the accused.

On the question of abandonment, the court charged, in effect, that if
the jury found the original unlawful enterprise to contemplate the
killing, if need be, of anyone who interfered with them, the accused
were guilty unless they had abandoned not only their purpose

The State *v.* Klein.

to steal silk but also their purpose of resisting interference with their escape. *Held* that there was no error in this instruction.

There was no evidence from which an abandonment could reasonably have been found by the jury. *Held* that for this reason the accused were not harmed by the court's instruction that if certain of the accused were not present at the shooting and had honestly indicated an intention of abandoning the whole enterprise, they would not be guilty of murder in the first degree, or perhaps of murder in the second degree.

Argued October 6th, 1921—decided March 29th, 1922.

INDICTMENT for murder in the first degree, brought to the Superior Court in Hartford County and tried to the jury before *Warner, J.;* verdict and judgment of guilty of murder in the second degree, from which Klein and Bessler, two of the five accused, appealed. *No error.*

*August Ziegener* of Jersey City, New Jersey, and *John F. Forward,* Public Defender, for the appellants Klein and Bessler (two of the accused).

*Hugh M. Alcorn,* State's Attorney, and *Newell Jennings,* Assistant State's Attorney, for the appellee (the State).

WHEELER, C. J. The accused, five in number, were tried together upon a joint indictment charging them with murder in the first degree. Two of them, Bessler and Klein, duly filed motions for separate trials, and they assign, as error, the denial of these motions. Our rule is settled. A motion for a separate trial is addressed to the sound discretion of the court, and its decision will not be reversed unless there has been an abuse of judicial discretion. A separate trial will be ordered where the defenses of the accused are antagonistic, or where evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prej-

udicial to the rights of one or more of the accused. The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. The test for this court is whether the denial of the motion for a separate trial has resulted in substantial injustice to the accused. *State* v. *Castelli*, 92 Conn. 58, 101 Atl. 476; *State* v. *Brauneis*, 84 Conn. 222, 79 Atl. 70.

In the exercise of a wise discretion, the court should ascertain by inquiry, if counsel do not develop it, the character of the evidence to be offered by the State affecting one and not the rest of the accused, in order to see whether the introduction of evidence against one accused will be antagonistic to the defenses of the other accused, and whether the joint trial will be prejudicial to the rights of any of the accused. The difficulty of the jury separating evidence as to one and considering it as to that one only, and the especial difficulty where that kind of evidence is varied and affects different accused, is apparent. "Ordinarily the fact that one of the accused has made a confession incriminating the other, would be a good ground for granting a separate trial." *State* v. *Castelli*, 92 Conn. 58, 63, 101 Atl. 476. In the present case two confessions or statements were offered, besides other evidence of lesser consequence, and admitted against one or two of the accused. None of this evidence, except as to one confession, was known to the court at the time these motions were heard and decided. "When the existence of such evidence is relied on as a ground for a motion for separate trials, the character of the evidence and its effect upon the defense intended to be made should be stated, so that the court may be in a position to determine the probability of substantial injustice being done to the moving party from a joint trial." *State* v. *Castelli, supra.*

With the fact of the single confession before it, we cannot say that the court abused its discretion in denying these motions. If all the evidence of this character which was offered, had been before the trial court, quite likely the court would have granted the motions. But it would not follow that its refusal to do so would be an abuse of its discretion. "The controlling question," on the appeal, "is whether it appears that a joint trial will probably result in substantial injustice." *State* v. *Castelli, supra.* Had all this evidence been before the court, our study of this case would not lead us to the conclusion that these accused had suffered substantial injustice by the denial to them of separate trials; on the contrary, they seem to have been accorded a fair trial.

After the accused had exhausted their challenges, one juror, Maude, was selected over the exception of Bessler and Klein. The claim of the accused is that they were compelled to exhaust their challenges in excepting to jurors who were improperly accepted by the court, and so could not exercise their right of challenge as to Maude. This claim is made as to their exception to jurors Potwine, Morton, Ronan and Jester. These jurors testified that they had read an account of the transaction in the newspapers, and formed an opinion from such reading of the guilt of the accused based upon the accuracy of the facts stated in the newspapers; that they had no prejudice against the accused, and that they could disregard the opinion so formed and try the case against the accused solely upon the evidence submitted in court. The question of the disqualification of these jurors under these circumstances was a question of fact to be determined upon the exercise of the court's best discretion. The circumstances do not present the exceptional case where there has been an abuse of discretion by the trial

court which this court will review. The rule in this State
is too well established to require restatement. *State* v.
*Willis,* 71 Conn. 293, 41 Atl. 820; *State* v. *Laudano,* 74
Conn. 638, 648, 51 Atl. 860; *State* v. *Wilson,* 38 Conn.
126.

Assignments of error 23 to 36, inclusive, seek to
correct the finding by the procedure outlined in General
Statutes, § 5832. That form of procedure is adapted to
corrections of findings in cases tried to the court, and
should not be used for the correction of findings in jury
cases. But if the correction of the finding had been
asked for under General Statutes, § 5829 or § 5836, it
would not have resulted in a change of the finding
so as to affect any ruling or claim of law before the
court. In a few particulars we find no justification in
the evidence for the facts stated: for instance, the find-
ing that one purpose of the trip to Manchester was to
break into cars standing on the siding near the Cheney
Brothers' warehouse. That fact was not testified to
by anyone, and is not a fair inference from any facts in
evidence. That purpose appears to have been con-
ceived of after the accused reached Manchester. Again,
the finding that when all of the accused left the auto-
mobile to go to the warehouse, each took a loaded
revolver with him, does not appear to have been testified
to by any witness. Miller testified that he took his
revolver with him, but that was as far as the evidence
went. Then the finding that when Neuss stood up
in the automobile and shouted, "Get off this car or
we'll shoot," he was speaking for his companions in
the car, is not supported by any testimony, and is
not a fair inference to be drawn. Many of the findings
which the accused most strenuously object to are
inferences properly drawn from the evidence. Thus,
the finding that "the revolvers with which all the
accused were armed at the time they left Bessler's

saloon, were given to them and were received by them for the purpose of shooting any person who might interfere with them in the commission of the felony, or for use in effecting their escape in case of arrest or attempt at arrest,"—was a claim made by the State and a reasonable inference from the evidence. When the correction of a finding in a jury case under § 5829 or § 5836 is sought, it is well to remember that the finding in a jury case does not serve the same purpose as the finding in the court case. Its sole purpose is to present a fair picture of the facts in evidence which each party offered and claimed to have proven, so that the rulings and claims of law made can be understood and properly applied.

The motion to set aside the verdict as against the evidence, was properly denied. The jury might reasonably have found the following facts: The accused, with five associates, met at Bessler's (one of the accused) saloon in Hoboken, on the morning of January 30th, and there Bessler and McDonald, his bartender and one of the accused, distributed revolvers, one to each of them. Four of the six left the saloon and boarded Klein's (one of the accused) automobile driven by him. And two of the accused, Bessler and McDonald, left in a large truck. All were bound for Manchester, Connecticut, for the purpose and with the intention of breaking into the warehouse of Cheney Brothers and stealing silk therefrom and carrying the same away in the truck. They arrived at Manchester, bought some supplies, looked the situation over, and Klein broke the seals of railroad cars upon Cheney Brothers' siding. Later, while the six were examining the warehouse and premises with a view to ascertaining how to effect the theft of the silk, two officers guarding the plant approached and all six started for the automobile, which they had left a short distance

away.   The officers intercepted them as they were
boarding the car, searched them, and finally informed
them that they must go to the Manchester hose house.
One officer was on the front seat, the other, Madden,
stood on the running-board.   One of the six stood on
the opposite running-board, four were on or near the
back seat, and Klein was in the driver's seat.   The
automobile was just under way when Neuss, one of
the accused, arose from the middle of the rear seat of
the automobile and pointing a nickle-plated revolver,
one of the revolvers distributed in Bessler's saloon, at
the officers, shouted, "Get off this car or we'll shoot."
Macomber, an officer on the front seat with Klein,
got off the car, Madden stayed on.   A shot was fired
from inside the car immediately following the order
of Neuss, and this was followed by a fusilade of
shots from inside the car, and Madden fell off the car,
mortally wounded by a shot from the nickle-plated
revolver fired by Neuss.   The jury were entitled to
infer, as the State claimed, that the accused received
and had these revolvers for the purpose of shooting
any person who might interfere with them in the steal-
ing of the silk, or for use in effecting their escape in
case of arrest or attempt at arrest.   Thereafter the
automobile proceeded to Hartford, and, when it was
pursued by an officer, three of the four men got off
the car and Klein, the driver, was arrested.   Miller
was apprehended a few days later, and Neuss, Bessler
and McDonald were brought from New Jersey by
extradition proceedings.

The finding of this conspiracy, and the use of the
revolvers in effecting their escape under these circum-
stances and in the absence of any circumstance of
justification or mitigation, made the killing of Madden
murder; and each one who shared in this criminal
conspiracy was equally guilty, unless he had abandoned

the unlawful purposes prior to the shooting of Madden.

About five minutes after the shooting the truck, which had been standing in a dark portion of Walnut Street not far from the Cheney Brothers' warehouse, was started by Bessler, and he and Miller drove away. The State claimed, as an inference from the facts in evidence, that Bessler and Miller were in the automobile at the time of the shooting, and that all of the accused actively assisted in preparation for the burglarious theft of the silk, and were actively assisting in the attempted felony and in the homicide which followed. Bessler claimed that he remained with the truck and did not go to the warehouse with the others; and he and Miller claimed that Miller went part way toward the car and then left the others, at the suggestion of McDonald, to notify Bessler that they were discovered and that the enterprise must be abandoned; and that he so told Bessler, and they at once abandoned the enterprise and left in the truck and had nothing to do with the shooting, but heard a shot just as they were starting.

Both Bessler and Klein claim error in the court's charge on the subject of the effect of abandonment. Whether the accused, or any one of them, had abandoned their unlawful purposes, was a question of fact for the jury, and was submitted to the jury with unexceptionable instruction in the first instance, when the court said: "That where there has been a plan, a common enterprise, a criminal plan, a combination, to perpetrate an illegal and criminal act, in case all the parties agree to abandon the enterprise, or if some do actually abandon it and inform their associates of their intention to abandon it—either by acts or words, those who abandon it cannot be held responsible for the acts of the others." This instruction followed *State* v. *Allen,* 47 Conn. 121. The court presented

with especial clarity the subject of the two purposes of the conspiracy, as claimed by the State. "But, gentlemen, here the unlawful enterprise, as claimed by the State, was not merely the stealing of silk from the silk mills, but contemplated the further purpose, as shown by the elaborate preparation of dangerous and deadly weapons, distributed to all alike, which were and could be of no use in breaking into a railroad car or warehouse, but were for the purpose of resisting to the death any attempt to interfere with them or apprehend them later in their escape. The State claims that though the purpose to steal may have been abandoned, the purpose to kill, if need be to make their escape, was never abandoned by any of the five accused persons. It is for you, gentlemen, to determine from the evidence detailed before you: First, whether the State's claim as to the nature of the original unlawful enterprise is correct; that is, whether it did contemplate the killing if need be of anyone who interfered with or interrupted their work—either in doing it or in subsequently trying to escape. That is to be found by you first beyond any reasonable doubt—whether that was part and parcel of the original enterprise or not. And the next inquiry: If it had been abandoned, what part of the enterprise had been abandoned, whether the purpose of resisting such interference with their escape had been abandoned by all, or some of them, and notice given by those to the others."

The verdict of the jury indicated a finding that there had been no such abandonment. There was no evidence that we discover from which the jury could reasonably have found that any of the accused had abandoned the purpose of resisting interference with their escape, so that even though the jury found that the accused had abandoned their purpose to steal silk, as the evidence seems to indicate, none of the accused would be

relieved from responsibility for the acts of any accused in fulfillment of this purpose of resistance, since there had been no abandonment of that purpose.

The State claimed that Bessler and Miller were in the automobile at the time of the shooting and thereafter went to the truck; Bessler and Miller claimed that Bessler never left the truck. The court left to the jury the determination as a fact whether Bessler and Miller, as well as the other accused, had abandoned the two purposes of the conspiracy. Later, the court instructed the jury: "If you find, gentlemen, that Bessler and Miller in good faith were not at the car, and by their acts or by their words had honestly indicated an intention of abandoning the whole enterprise, and had left and were not with them, then, gentlemen, they would not be guilty of murder in the first degree, or perhaps of murder in the second degree." It is this portion of the charge upon which the principal ground of error in the instructions upon the subject of abandonment is based. If the court intended to include, by the term "the whole enterprise," not only the stealing of silk, but also the use of the revolvers to effect their escape, the instruction was erroneous; for an abandonment of the two purposes of the conspiracy would have relieved Bessler and Miller from all responsibility for the subsequent acts of their fellow conspirators. But if the court meant by "the whole enterprise," merely the stealing of the silk, the instruction was too favorable. For unless there had been an abandonment of the purpose to use the revolvers in effecting their escape, and one of the accused killed Madden with his revolver without circumstances of justification or mitigation present, Bessler and Miller would be equally guilty with him who fired the fatal shot. Bessler and Miller had not announced to their co-conspirators their abandonment

of the purpose of the accused to escape by the use of the revolvers, and there was nothing in their conduct which permitted the drawing of this inference. Since the jury could not reasonably have found that these accused had abandoned this purpose, we cannot see that any harm was done the accused by this charge, assuming that the court intended by "the whole enterprise" to include the purpose to use the revolvers in effecting their escape.

Upon the evidence submitted, and the claims of the State made thereon, and in view of our statute (§ 6716) that "every person who shall assist, abet, counsel, cause, hire or command another to commit any offense may be prosecuted and punished as if he were the principal offender,"—the jury might reasonably have rendered the verdict they did.

There is no error.

In this opinion the other judges concurred.