STATE OF CONNECTICUT *v.* MICHAEL HOLUP

HOUSE, C. J., COTTER, LOISELLE, BOGDANSKI and MULVEY, JS.

Argued June 25—decision released August 27, 1974

*John R. Williams,* special public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Dennis Gaffney,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. The defendant, Michael Holup, was tried to a jury of twelve and convicted of kidnapping, robbery with violence and binding with intent to commit crime in violation of §§ 53-27, 53-14 and 53-19 of the General Statutes, respectively.

The basic facts are relatively simple. On the morning of September 19, 1969, Wilfred J. Paul, the manager of an A & P store in Milford, went to the First New Haven National Bank to pick up the store's weekly change fund consisting of $1500 in one dollar bills and $730 in rolled coins. He was accompanied to the bank by an employee of the

store, Richard Nylen.[1] Paul and Nylen, carrying three canvas sacks containing the money, left the bank by a rear door for the short walk to the store. When they were adjacent to the A & P parking lot, they were accosted from behind by a man armed with a revolver who ordered them into a four-door, gray Chrysler sedan which had pulled up. They were told to lie down in the rear of the car which had no seats, and, as the car was driven away, their hands were taped behind their backs. The man with the revolver occupied the rear space of the car with Paul and Nylen. Two other men were in front.

Because of his position, Paul was unable to ascertain the route taken by the driver, but after a time the Chrysler stopped, and Paul and Nylen were told to get out and made to lie on the side of a road facing the bushes. That road was a dead-end side road. Paul and Nylen were unable to undo their bindings, and as they walked back to the main road, the Chrysler sped past them, having turned around. The car turned left at the main road as another car approached the intersection. The driver of this car recognized Paul as the A & P store manager, stopped, picked up Paul and Nylen and took them to Milford police headquarters.

As a result of police radio calls, Milford Detective Sergeants Daniel Sullivan and William Pendleton, plain clothesmen on duty in an unmarked police car, drove to several locations in Milford in search of the gray Chrysler and its three occupants. They then parked at the intersection of Old Gate Lane and New Haven Avenue. A gray Chrysler with three persons in it and a license plate bent so as to be unreadable came down New Haven Avenue and

---

[1] At the time of the trial, Nylen was with the armed forces in Germany and did not testify.

stopped at the traffic light. The sergeants got out of their car and approached the Chrysler with drawn revolvers, identified themselves as police officers and asked the three occupants to leave it with their hands up. Sergeant Sullivan also had his shield and badge case in his right hand. The Chrysler accelerated at a high rate of speed, and the police officers fired four shots at it, striking the driver's wing window, the left rear fender and the rear window. The officers then gave chase during which they were fired upon from the Chrysler. Two bags were thrown from the right side of the Chrysler, the second bursting and throwing coinage all over the road. The chase ended at a roadblock set up by the West Haven police, and Howard R. Luban, William L. Gordon and the defendant were removed from the Chrysler. The police found a white money bag on the floor of the front seat.

Holup, Gordon and Luban were all charged with kidnapping, robbery with violence and binding with intent to commit crime. Luban pleaded guilty to robbery with violence as a result of his participation in the incident, and Holup and Gordon were jointly tried and convicted on all three counts. Holup did not testify at the trial; Gordon did testify. Gordon's basic defense was that although the crimes were committed as the state claimed, he had participated only because Holup had coerced him at gunpoint and with threats to his life and the lives of his wife and family. His description of the commission of the crimes and Holup's participation in them was substantially the same as that given by the victim Paul and the police officers who pursued the man and made the arrests.

The defendant, significantly, has not asserted a claim that the guilty verdict rendered by the jury

was not supported by the evidence, but has briefed twelve claims of error. We find that a decision on one of these claims is decisive of the merits of this appeal, and that issue, as phrased by the defendant, is: "Did the action of the State in joining the case of the defendant with that of the co-defendant Gordon, and the court's failure to sever the trials, deny the defendant due process of law?"

Prior to the trial, a motion to sever the trials of Gordon and Holup was made on the ground that the two defendants would assert defenses antagonistic to, and mutually exclusive of, each other so that a joint trial would deny each defendant due process of law. The motion was denied by the court, but the judge then presiding died before filing a memorandum of decision on the motion or making a special finding.

"Whether a separate trial shall be allowed to parties jointly indicted is within the discretion of the court. Ordinarily justice is better subserved where the parties are tried together. But cases arise where the defenses of the different parties are antagonistic, or where evidence will be introduced against one which will not be admissible against others. Where from the nature of the case it appears that a joint trial will probably be prejudicial to the rights of one or more of the parties, a separate trial should be granted when properly requested." *State* v. *Brauneis,* 84 Conn. 222, 226, 79 A. 70. "The discretion of the court is necessarily exercised before the trial begins, and with reference to the situation as it then appears; and the phrase 'prejudicial to the rights of the parties,' means something more than that a joint trial will probably be less advantageous to the accused than separate

trials. The controlling question is whether it appears that a joint trial will probably result in substantial injustice." *State* v. *Castelli,* 92 Conn. 58, 63, 101 A. 476; see Practice Book § 532; *State* v. *Hunt,* 154 Conn. 517, 521, 227 A.2d 69, vacated on other grounds, 392 U.S. 304, 88 S. Ct. 2063, 20 L. Ed. 2d 1110; *State* v. *McCarthy,* 130 Conn. 101, 104, 31 A.2d 921; *State* v. *Klein,* 97 Conn. 321, 323–24, 116 A. 596; note, 54 A.L.R.2d 848.

Because a preliminary motion for separate trials obviously must be decided before the actual trial, the merits of the motion can be determined only on the basis of whether at that time it appears that injustice is likely to result unless separate trials are held. It is for this reason that in support of such a motion the court must be fully informed of any and all circumstances which indicate that justice to the parties requires separate trials. Even with a full disclosure, supplemented by inquiry from the court "[i]n the exercise of a wise discretion"; *State* v. *Klein,* supra, 324; exceptional cases may arise where a motion for separate trials has been denied, but during or after the joint trial it appears that the joint trial is resulting or has resulted in substantial injustice to one or more of the accused. In such circumstances, justice to the prejudiced accused requires that he be afforded a new trial. Chief Justice Wheeler in *State* v. *Klein,* supra, 324, summarized the governing principles thusly: "The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. The test for this court is whether the denial of the motion for a separate trial has resulted in substantial injustice to the accused."

An examination of Gordon's testimony reveals the extent to which it was antagonistic to and incrimi-

nated his codefendant Holup. Much of the evidence in the case concerned the question of identification, and it was Gordon who testified to the details of Holup's participation in the crimes in the most minute detail, not only corroborating the testimony of the state's witnesses but supplying details of Holup's activities not otherwise disclosed. Aside from corroboration, Gordon was the most effective witness for the state's case against his codefendant while testifying on his own behalf and asserting his own submission to Holup's duress. Gordon testified that Holup came to his home, threatened him with a pistol and ordered him: "Come on, get dressed, we are going to pull a job." In direct testimony and on cross-examination by the state, Gordon described how Holup grabbed Paul, threatened him, shoved Paul and Nylen into the car, bound them, directed the flight from the two detectives, fired at them and tossed the money bags out the window before being stopped at the roadblock.

Gordon's defense as it developed at the trial was predicated on what was essentially a confession and avoidance theory in which he implicated his codefendant, Holup, in virtually every element of the crimes for which they were being jointly tried. The defenses of the codefendants were not only incompatible but completely antagonistic. Applying the test prescribed in *State* v. *Klein,* supra, we conclude that the failure to sever the trials of these defendants did result in substantial injustice to the defendant, Holup, and that despite all the evidence of his guilt a new trial must be ordered. "In the trial of a person charged with the commission of a crime, it is more important to enforce the time-tested safeguards which the law has erected for the protection of the innocent than to distort and subvert them in

order to block the escape from punishment of even an apparently guilty person. Such has ever been the policy of this state. See *State* v. *Skinner,* 132 Conn. 163, 168, 43 A.2d 76; *State* v. *Perelli,* 128 Conn. 172, 181, 21 A.2d 389; *State* v. *Ferrone,* 97 Conn. 258, 270, 116 A. 336." *State* v. *Doucette,* 147 Conn. 95, 108, 157 A.2d 487, overruled on other grounds in *State* v. *Tillman,* 152 Conn. 15, 20, 202 A.2d 494; see also *State* v. *Mayell,* 163 Conn. 419, 428, 311 A.2d 60.

The improper manner in which counsel for the defendant, serving in his capacity as a special public defender, has prepared and presented this appeal prompts us once again to comment on his apparent inability or unwillingness to comply with even the basic rules of appellate procedure. See *State* v. *Brown,* 166 Conn. 203, 353 A.2d 721.[2] The procedure used by counsel acting in his capacity as a special public defender places an undue burden on the appellee. It is an imposition on both the trial court and this court; it causes an unjustified expenditure of public funds and, by the delay which it

[2] The defendant's draft finding consisted of 886 paragraphs. His counsel assigned error in relation to over 450 paragraphs and subparagraphs of the finding and draft finding some of which "paragraphs" comprise in the printed record a mass of verbatim trial transcript wholly unrelated to any precise claim of error. He required the printing in the record as a single "paragraph" of the draft finding ninety-two pages verbatim from the transcript of the examination and cross-examination of the witness Luban and the printing of the court's charge to the jury in its entirety although he briefed as error in the charge only that portion relating to a modified form of the charge which this court approved in *State* v. *Smith,* 49 Conn. 376, 386. He also included in the draft finding and required the printing in the record of several of the pretrial proceedings involving only the cases of Gordon and Luban. As a result, the court's finding required 568 pages in the printed record—the court noting: "The unorthodox manner in which the draft finding has been prepared required the finding be prepared in a manner that departs from section 629 and form 603 B of the Practice Book."

inevitably causes, results in a disservice to the defendant whom counsel was appointed to represent. It is impossible to conclude that the conduct of defense counsel in this case is inadvertent and unintentional. The courts are not powerless to protect themselves and the taxpayers from a continuance of the conduct in which he has persisted.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.