STATE OF CONNECTICUT *v.* PAUL DEWITT

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued April 5—decision released June 12, 1979

*Courtney B. Bourns,* special public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* chief appellate counsel, office of the chief state's attorney, with whom, on

the brief, were *Austin J. McGuigan,* chief state's attorney, and *Richard E. Maloney,* assistant state's attorney, for the appellee (state).

PETERS, J. The defendant and a codefendant were tried together and convicted, after a trial to a jury, of burglary in the third degree in violation of General Statutes § 53a-103a, robbery in the first degree in violation of § 53a-134 (a) (2), and kidnapping in the second degree in violation of §§ 53a-94 and 53a-91 (2) (b). Each defendant after entry of judgment separately appealed to this court. The appeal of the codefendant, which has already been decided; see *State* v. *Lee,* 177 Conn. 335, 417 A.2d 354 (1979); raised some but not all of the issues involved in this appeal.

From the evidence introduced at trial, the jury might reasonably have found the following facts: On December 10, 1974, Frank W. Salamon was residing with his parents in a two-story, one-family home located in a rural area of Canton. About 11 a.m., as Salamon was awakening in his second floor bedroom, he heard a noise downstairs and the family dog barking. Salamon put on his eyeglasses and proceeded to the staircase which was close to his bedroom. As he started downstairs, he encountered a black male, whom he later identified as the codefendant George W. Lee. Lee, who was coming up the stairs, pulled out a pocketknife with a three- or four-inch blade, pointed it at Salamon, and ordered him to return to his bedroom. Salamon was directed to sit on the bed while Lee took things from drawers and cabinets and put them in a pillowcase. While Salamon was sitting on his bed a white male entered, wearing a scarf that covered the lower part of his face; this white male was subsequently identified as

the defendant Paul DeWitt. Thereafter Lee left the room, but returned five minutes later and remained in the room with the defendant DeWitt for about another five minutes. While both intruders were together in the bedroom, the defendant tied Salamon on the bed with a lamp cord, and a sheet was tied around his head, so that he could not see. Shortly after the pair left, Salamon freed himself and immediately notified the police.

The defendant on this appeal has briefed assignments of error relating to four major issues: (1) should the trial court have set aside the verdict of kidnapping in the second degree? (2) should the court have granted the motion to suppress two pretrial identifications? (3) should the court have excluded certain evidence as hearsay and lacking in probative value? and (4) should the court have separated the defendant's trial from that of the codefendant Lee? The defendant also challenges the trial court's failure to include in its finding certain paragraphs of the defendant's draft findings; the state has waived objection to inclusion of all but three of these paragraphs and they are therefore added to the finding. The remaining requested additions to the finding are either implicit in the finding; *State* v. *Warren,* 169 Conn. 207, 214, 363 A.2d 91 (1975); or are disputed or not admitted or would not affect the result. *Aillon* v. *State,* 168 Conn. 541, 542, 363 A.2d 49 (1975).

## I

The sufficiency of the evidence to support conviction on the charge of kidnapping was discussed extensively in *State* v. *Lee,* supra, 342–44. We there held that the facts — Salamon's movement at knifepoint back up to his bedroom, his detention in that

bedroom during the course of the robbery, and his being left tied up so as to require time to extricate himself — were sufficient to permit a jury to find the restraint and intent necessary to constitute kidnapping in the second degree. "[T]he legislature [has] seen fit not to merge the offense of kidnapping with other felonies, nor to impose any time requirements for restraint, nor distance requirements for asportation, to constitute the crime of kidnapping." Id., 343. There was therefore no error in the trial court's failure to set aside the verdict of kidnapping in the second degree under §§ 53a-94 and 53a-91 (2) (b).

## II

The defendant was identified at the trial by the victim Salamon as the white man who had committed the crimes charged at Salamon's Canton home. Before the trial began, the defendant moved to suppress this identification, arguing that two pretrial identifications were unconstitutional, should be suppressed, and had irretrievably tainted the in-court identification. This issue also was discussed, at least in part, in *State* v. *Lee*, supra.

When Salamon reported the crimes to the police, he furnished them with a description of a white man, five feet, ten inches in height, of medium build, having black hair of short length. He told one of the police officers that the white man who had robbed him had a broad forehead with a high hairline. At Hartford police headquarters, about an hour after the crime had been committed, Salamon examined five mug shots of white males and picked out one of them, a photograph of the defendant DeWitt, as the white man in question. Salamon was aware, before he examined the photographs, that a photograph of a suspect would be in the group of pictures

that he was to be shown. The photographs, all of white men, included several men with long hair, and one with glasses, although Salamon had indicated that the white intruder had short hair and wore no glasses. Nonetheless, in the circumstances of this case, including Salamon's unrestricted opportunity while wearing eyeglasses to view DeWitt in his room, in full daylight, for at least ten minutes, the accuracy of his description, and the relative brevity of time between the commission of the crime and his positive identification of the photograph, the trial court was clearly correct in concluding that the photographic identification of the defendant DeWitt was not made under impermissibly suggestive conditions. *State* v. *Willin*, 177 Conn. 248, 252, 413 A.2d 829 (1979); *Manson* v. *Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140, 144 (1977).

Salamon had another opportunity to identify the defendant DeWitt in advance of trial when he was taken to see DeWitt and Lee in the corridor of the Court of Common Pleas in Middletown. The circumstances surrounding this "corridor confrontation" are fully detailed in *State* v. *Lee,* supra, 337–42. Even if we assume, as the state virtually concedes, that this identification was unconstitutional, the fact remains that the state never directly introduced this pretrial identification. For this reason, the trial court made no ruling about the admissibility of the identification of the defendant at Middletown. What is at issue is not this identification per se but rather its bearing on the admissibility of Salamon's subsequent identification in court. The trial court concluded that the state had established by clear and convincing evidence that Salamon's in-court identification was based upon his original observation and recollection of both defendants at

the scene of the crime, and not upon the events of the "corridor confrontation" in Middletown. As in *State* v. *Lee,* we agree.

## III

The defendant claims that the trial court erred in admitting into evidence certain testimony alleged to be hearsay or irrelevant. These evidentiary claims have been presented in the defendant's brief in a manner that fails to conform with the requirements of Practice Book, 1978, § 3054 (c) (3). That section states: "When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made." Since the questions raised at best challenge the exercise of the discretion of the trial court to determine admissibility, and hence do not rise to a constitutional level, they will not be considered.

## IV

The defendant's final claim is that he was substantially prejudiced by the trial court's failure to grant his motions, both pretrial and during trial, to sever his trial from that of the codefendant Lee. This court has recently restated the rules that govern motions for separate trials. "Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court. *State* v. *Castelli,* 92 Conn. 58, 65, 101 A. 476. Section 532 of the 1963 Practice Book required joint trials of two or more persons being tried for the same offense unless good cause existed for severance of the trials. There is no affirmative duty on the part of the court

to move for separate trial. A separate trial will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. *State* v. *McLucas,* 172 Conn. 542, 559, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126; *State* v. *Holup,* 167 Conn. 240, 245, 355 A.2d 119; *State* v. *Klein,* 97 Conn. 321, 324, 116 A. 596; *State* v. *Castelli,* 92 Conn. 58, 101 A. 476; *State* v. *Brauneis,* 84 Conn. 222, 226, 79 A. 70." *State* v. *Varricchio,* 176 Conn. 445, 447, 408 A.2d 239 (1979).

The defendant concededly made a timely pretrial motion to sever. At that time, the court was informed that if DeWitt was tried with his codefendant Lee, cross-examination might bring to light facts concerning the confrontation at Middletown which would be prejudicial to DeWitt and would not otherwise be introduced. DeWitt argued that evidence might be introduced about a criminal relationship between two men, one black and one white, resembling the intruders into the Salamon home, and about the fact that he and Lee were, when identified in Middletown, handcuffed in visible police custody, on an unrelated criminal charge. Relying in part on the state's assurance that the state did not intend to put before the jury evidence of the identification made of the defendants in Middletown, the court ruled that a joint trial would in all probability not prove prejudicial to the rights of the defendant DeWitt. The court noted that there was no evidence of antagonism between the defendants

but rather self-serving denials that would not redound to the associated discredit of the defendant DeWitt. Apart from the articulated concern about evidence of the Middletown confrontation, the defendant offered no information about the likelihood of antagonistic defenses or the admission of evidence by or against Lee that would prejudice DeWitt. On the record before the court at the pretrial motion, the court was clearly acting within its discretion in refusing to order a separate trial.

During the course of the trial, however, despite the state's earlier assurances to the contrary, testimony about the Middletown confrontation was in fact adduced. Since Salamon's in-court identification of Lee was a key element in the case against Lee, Lee attempted to impeach that testimony by bringing into evidence the circumstances of Salamon's pretrial identification of Lee. In cross-examining Salamon, Lee elicited from Salamon testimony that Salamon had first identified DeWitt alone and only subsequently, after seeing DeWitt and Lee standing together, identified Lee. After Lee's interrogation of Salamon on cross-examination about the circumstances of this identification, the state on redirect examination, over the objection of both defendants, asked where the identification, not previously located as to place, had occurred. Salamon then testified that the identification was in the courthouse in Middletown. He further testified that DeWitt and Lee were in court in the custody of a state police officer, handcuffed, and that he recognized DeWitt. Thereupon DeWitt moved for a mistrial on the ground that the joint trial had prejudiced him by bringing before the jury the precise evidence about unrelated crimes and improper identification to which the court had been

alerted in the pretrial motion to sever. The state justified its introduction of evidence about the Middletown confrontation, despite its earlier contrary representation, on the ground that the cross-examination of Salamon by Lee had opened up the subject. The court overruled various timely exceptions by both defendants, and denied DeWitt's motion for a mistrial, ruling that no material evidence had appeared, or was likely to appear, that would not have appeared in the absence of a consolidation for trial with Lee.

The ruling denying the defendant's motion for mistrial is vigorously attacked on this appeal. It is clear that the question of prejudice arising from the actual conduct of a joint trial is a question independent of the proper resolution of a pretrial motion for a separate trial. If the denial of the later motion has in fact resulted in substantial injustice to the accused, a new and separate trial is required. *State* v. *Holup,* 167 Conn. 240, 245, 355 A.2d 119 (1974); *State* v. *Klein,* 97 Conn. 321, 324, 116 A. 596 (1922). In view of our earlier conclusion on the independent foundation for Salamon's in-court identification of both defendants, the state's elicitation of the Middletown identification, while regrettable, is not so material as to be substantially prejudicial on the issue of identification.

The evidence relating to the Middletown confrontation, however, also brought to light DeWitt's participation with Lee in activities unrelated to the crimes charged herein. Not only did this evidence reenforce the association between DeWitt and Lee; it also indicated that their association may have resulted in other criminal acts. The potentially prejudicial impact of testimony indicative of unre-

lated criminal acts is not inconsiderable. The state has proffered no argument to suggest a basis upon which such evidence could have been admissible against the defendant DeWitt had he been tried separately. Nonetheless, when the record before us is viewed in its totality, we cannot say that this possibly harmful evidence so substantially prejudiced the defendant that failure to grant a mistrial was an abuse of the discretion of the trial court.

In weighing the harmfulness of the evidence to the defendant's case, we note several significant factors. The degree of prejudice suffered by this defendant must take into account that his defense was the denial, by means of alibi witnesses, of his presence at the Salamon house. This alibi defense cannot be said to have been materially impaired by evidence of unrelated criminal acts. As to the fairness of the trial as a whole, neither the factual sufficiency of the evidence to convict nor the adequacy of the charge to the jury has been challenged. In this context, the case is readily distinguishable from situations in which joinder has generally been considered prejudicial. DeWitt was neither confronted by the confession of a codefendant inculpating him; see *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968);[1] nor adversely affected by testimony of his codefendant. Lee did not seek to shift blame to DeWitt or to avoid testifying on DeWitt's behalf. *State* v. *Holup*, supra, 245–46. See Wright, Federal Practice & Procedure §§ 223–226 (1969). Whether or not with the benefit of hindsight it may now appear that a separate trial

[1] Although *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), was an interpretation of rule 14 of the Federal Rules of Criminal Procedure, its holding was subsequently held applicable to state criminal procedure. *Roberts* v. *Russell*, 392 U.S. 293, 294, 88 S. Ct. 1921, 20 L. Ed. 2d 1100 (1968).

might have more completely safeguarded the rights of the defendant, "the phrase 'prejudicial to the rights of the parties' means something more than that a joint trial will probably be less advantageous to the accused than separate trials." *State* v. *McCarthy,* 130 Conn. 101, 103, 31 A.2d 921 (1943). The decision whether to grant a motion for mistrial turns on whether an event has occurred that is so prejudicial to the defendant that he cannot have a fair trial and that the whole proceedings are vitiated. This is a matter in which the trial court, viewing the trial as a whole, must have wide discretion. *State* v. *Hawthorne,* 176 Conn. 367, 372, 407 A.2d 1001 (1978); *State* v. *Adams,* 176 Conn. 138, 146, 406 A.2d 1 (1978). We do not believe that the trial court in this case abused that discretion in refusing to grant a mistrial.

There is no error.

In this opinion the other judges concurred.