[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case presents a petition by the Department of Children and Families (DCF) asking that the parental rights of the respective parents of Jayell I. be terminated. The parents are Danielle P., the mother and Shadeem I., the father.
On November 2, 2001, DCF filed a petition to terminate the parental rights of Danielle P. and Shadeem I. Both parties were properly served. Mother appeared in court and was appointed counsel. Father did not appear CT Page 8738 for any hearings in the matter and a default judgement was entered against him on December 3, 2001.
Danielle P. (respondent) opposed the petition. The statutory grounds alleged in the petition against her were that her child had been found in a prior proceeding to have been neglected and she had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child. C.G.S.17a-112 (j)(3) B. The second ground alleged in the petition against her was that she was the mother of a child, under the age of seven, who is neglected or uncared for, and she has failed or is unable or unwilling to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, she could assume a reasonable position in the life of the child and her parental rights to another child were previously terminated pursuant to a petition filed by the Commissioner of the Department of Children and Families. C.G.S. 17a-112 (j)(3) E. The matter was tried to the court on April 8, 2002 and June 17, 2002. The respondent was present the first day and was represented at trial by counsel. She failed to appear for the second day. Also present were attorneys for DCF and the child. All counsel participated in the examination of witnesses and closing argument. The petitioner called Wendy Blake, Jane Pertill, and Freda Griffin from DCF, Dr. Kelly Rogers, and Darlene Poudrier from Birth to Three. Neither the respondent nor the child called any witnesses. The petitioner introduced eight exhibits: a memorandum of decision dated August 6 2001, terminating the respondent's parental rights to another child, copies of specific steps for mother and father, a certified copy of a conviction for Possession of Narcotics for Danielle P., a social study dated December 12, 2001, Dr. Rogers' report and a log summarizing the respondent's visitation schedule. The respondent introduced one exhibit, a Klingberg Preservation Termination Summary.
The court finds that it has proper jurisdiction of the matter and that there are no pending actions affecting the custody of the minor child. The court has carefully considered the petition, all of the evidence and testimony presented, and the arguments of counsel, according to the standards required by law. On the basis of the evidence presented and for the reasons stated below, the court finds in favor of the petitioner and hereby terminates the parental rights of the respective parents.
 FACTS
The court finds the following facts by clear and convincing evidence:
A. Procedural history
CT Page 8739
Jayell I. was born on 05-99 to Danielle P. who was seventeen years old and committed to DCF at the time. When Jayell was born mother was living in East Hartford with a person who had a history with DCF and could not qualify for licensing. DCF offered to find alternative living arrangements for Danielle and Jayell but mother refused to move resulting in a 96-hour hold on Jayell. An order of temporary custody for Jayell was sustained on 05-20-99. On 03-06-00, Jayell was committed to the petitioner. The commitment was extended on 03-06-01. On 03-06-00 the court approved specific steps which were signed by the respondent mother and father. (State's Exhibit 3).:
a. Participate in counseling; individual/parenting.
 Progress towards identifiable treatment goals: parenting and individual.
b. No involvement with the criminal justice system
c. Visit the child as often as DCF permits
d. Maintain suitable housing.
e. Keep whereabouts known to DCF.
f. Family planning
 On 10-2-02, the court found by clear and convincing evidence that efforts to reunify with the father were no longer appropriate. The petition to terminate parental rights was filed on 11-02-01.
B. Mother. Danielle P.
Danielle P. was born on 11-10-81 and was placed with a foster family at the age of four due to her parent's chronic substance abuse. At the age of six, her foster mother adopted her. She continued to live with her until April 1995 when her adopted mother asked for her removal and signed a voluntary placement agreement with DCF.
From the time of her voluntary placement in 1995, Danielle's history is replete with runaway and out of control behavior. Between 04-18-95 and 07-27-95 Danielle was placed on more than twelve separate occasions. She was committed to DCF on 09-07-95. Throughout her commitment she was a chronic runaway and frequently lived in non-sanctioned homes. CT Page 8740
On 11-24-98 Dr. Bruce Freedman diagnosed Danielle with an Oppositional Defiant Disorder and Borderline Personality Disorder. The evaluation indicated that Danielle needed substantial adult guidance in a therapeutic setting.
She attended Weaver High School until the spring of 1998 when a decision was made that she transfer to adult education. She started the program in the fall of 1998 but never completed the classes. She enrolled herself into Weaver in the following fall but was discharged due to her behavior and failure to follow directives. She was transferred to Hartford High but the principal decided that due to her age, Adult Education would be more appropriate. On 1-14-98, Danielle was referred to Adult Education but failed to follow through.
Danielle has two children older than Jayell. Her oldest, Raekwon, resides with his paternal grandmother who was granted guardianship by Hartford Probate Court. Her daughter Katherine C. was born on 04-98. Danielle's parental rights to Katherine were terminated in Juvenile Court for Hartford on August 6, 2001 (Exhibit 1).
During this period of time Danielle was committed to DCF. She essentially failed to cooperate with the services provided to her including those offered through the Adolescent Unit. At times her whereabouts were unknown. When she was located, DCF attempted to help her by setting her up with programs such as St. Francis Outpatient Treatment but Danielle failed to follow through.
Danielle was arrested for Possession of Narcotics on 03-01-01 and convicted of that charge on 10-04-01. (State's Exhibit 5)
On 11-01 Danielle gave birth to another child, Montrell P. At that time Danielle reported that she was living at 21 Wolcott St. A home visit however disclosed that the apartment had been boarded up and the utilities including water had been turned off. The apartment had been abandoned during in October. Danielle had ceased paying her rent the previous May. Sometime after the birth of Montrell, Danielle entered My Sister's Place shelter and then moved to Safe Havens in Storrs, a transitional residence for young mothers. Despite the progress she was making and the services and assistance she was receiving, Danielle left that program and currently her whereabouts are unknown. She also failed to appear for the second day of the trial.
Kelly F. Rogers, Ph.D., performed a psychological evaluation of Danielle and Jayell on 12-05-01 (Exhibit 7). He found that Danielle was a person ". . . wedded to her beliefs and resistant to change. She is appreciably self focused. . . . More than most persons, she avoids CT Page 8741 addressing her problems and, where possible, simply chooses not to think about them." He further noted that she "is notably immature and lacks proactivity. She is most compelled by her own interests and it is probable that these interests might supercede those of a dependent child . . . Her distrust and notable resistance to authority suggest that she will avoid seeking help and would tend to resist those services that might be beneficial for her children. This is particularly of concern with regard to Jayell, who appears to be a child with special needs." Dr. Rogers also felt that termination was in Jayell's best interest and found little evidence of a compelling bond between mother and daughter.
The petitioner has offered the respondent numerous services during their relationship; first as a committed child and then as the parent of a committed child. The respondent has failed to cooperate. Her history with DCF shows a pattern of failure to follow through with services that were offered to her. In May of 1999 the petitioner referred Danielle to Catholic Family Services for parenting classes beginning in May of 1999. She was discharged the next month for poor attendance. In November of 1999, her social worker took her for an intake appointment at St. Francis Outpatient for individual counseling but Danielle failed to keep her weekly appointments with her assigned therapist. Danielle would indicate a willingness to participate in various programs but subsequently would claim that she was not in need of counseling or would not participate. She agreed to obtain services through the Adolescent Unit of DCF but later signed off on services. On 7-10-00, Freda Griffin, the last social worker assigned to Danielle referred her to Catholic Family Services in Waterbury for parenting and individual counseling because Danielle claimed to be living in Waterbury. Danielle failed to follow up on the referral. Ms. Griffin referred Danielle to ADRC on 10-09-00. Danielle participated in the intake assessment but did not follow through with the psychological evaluation and other recommendations that were made. On 4-09-01 she enrolled in a parenting education program offered by Family Life Education but attended only one session.
Danielle lived in various locations during the pendency of this case and often failed to keep DCF advised of her whereabouts.
Jayell has been in the custody of DCF since 05-07-99. During that time Danielle attended at best 50% of the scheduled visitations (exhibit 8). Freda Griffin testified that DCF would have provided assistance such as bus passes to facilitate visits but the respondent never asked.
C. Father. Shadeed I.
Little is known of the father since he has not made himself available to the petitioner. He was incarcerated from 3-21-00 until 06-01-01. While CT Page 8742 he was incarcerated, Shadeed expressed an interest in obtaining custody of Jayell. Mr. I. has failed to contact DCF since his release. He has made no attempt to visit his child nor has he inquired as to her well being. There is no evidence that he sent the child cards, letters or presents. There is no indication that he has supported the child financially or emotionally. The court issued Specific Steps for reunification on 10-04-00. There was no evidence presented that he complied with any of the steps.
D. Child. Jayell
Jayell I. was born on 05-99. She was placed in a West Haven foster home a couple of weeks after birth. She was moved to a Hartford foster home on 04-06-01 to facilitate court ordered visitation for the father. Jayell was referred to the Birth to Three Program because of developmental delays. An assessment done in the beginning of 2001 indicated that Jayell was functioning on the level of a six to eight month old. Jayell was not talking and appeared to be unable to understand the spoken language. Jayell was difficult to engage and experienced transitioning difficulty. She would experience "meltdowns" and would cry and cry without consolation. Fortunately, Jayell has made progress. She is talking up a storm according to the Birth to Three therapist. Transitioning is still a problem but there have been improvements. Based on test scores she appears cognitively delayed. She will require occupational therapy. She will also require a stable home environment without a lot of change. A maternal aunt has expressed a willingness to adopt Jayell. The aunt has been approved by DCF as an adoption resource. The plan is to place Jayell in the aunt's home by the end of July.
 ADJUDICATION
Reasonable Efforts
In order to terminate parental rights, DCF must show by clear and convincing evidence that "it has made reasonable efforts to locate the parent and reunify the child with the parent unless the court finds in this proceeding that the parent is unwilling or unable to benefit from reunification efforts . . . providing that such a finding is not necessary if the court has determined at a hearing that such efforts are not appropriate. Conn. Gen. Statutes 17a-112 (j)(1).
The court (Keller, J) made that finding with respect to the father on 10-02-01. This court finds by clear and convincing evidence that the respondent mother is unwilling to benefit from such services. The Department of Children and Families provided the respondent with a variety of counseling programs and opportunities to visit. Danielle CT Page 8743 failed to begin, complete, or show up on numerous occasions. It is obvious to this court that she is unwilling to cooperate with DCF's efforts to reunify
Each statutory basis set out in General Statutes Sec. 17a-112 (j) is an independent ground for termination. In re Baby Girl B. 224 Conn. 263. The petitioner is required to prove at least one of the grounds alleged in its petition by clear and convincing evidence.
A. Abandonment — General Statutes § 17a-112 (j) A as to fatherShadeem I.
This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child. Sporadic efforts are insufficient to negate the claim of abandonment. The test for determining abandonment of a child for purposes of termination of parental rights is not whether a parent has shown "some interest" in his child, but rather whether the parent has maintained any reasonable degree of interest concern or responsibility as to the child's welfare. In re Rayna M. 13 Conn. App. 23 (1987).
Attempts to achieve contact with a child telephone calls, the sending of cards and gifts and financial support are indicia of "interest, concern, or responsibility". In re Migdalia M. 6 Conn. App. 194 (1986).
Abandonment by the father has been established by clear and convincing evidence. Between the time he was released from jail to the filing of the petition there is no evidence that he visited Jayell. There is no evidence that he sent cards or gifts. There is no indication that he even inquired as to her well being. There is no evidence that he attempted to provide financial support. The court finds that the petitioner has sustained its burden of proof with respect to abandonment by the father.
B. Failure to Rehabilitate — General Statutes § 17a-112 (j)(B)as to mother, Danielle P. and father, Shadeem I.
If the parents of a child who has been found by the court to have been neglected or uncared for in a prior proceeding fail to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, they could assume a reasonable position in the life of the child grounds for termination exists. General Statutes § 17a-112 (b)(2).
Personal rehabilitation, as used in the statute, refers to the restoration of a respondent to a constructive and useful role as a CT Page 8744 parent. In re Migdalia M. 6 Conn. App. 194 (1986). The parent's compliance with the court ordered expectations entered at the time of the neglect adjudication are relevant but not dispositive to the rehabilitation finding. In re Luis C., 210 Conn. 157 (1989). The ultimate question is whether the parent at the time of the filing of the termination petition is more able to resume the responsibilities of parents than he or she was at the time of the commitment. In re Michael M., 29 Conn. App. 112
(1992).
Jayell was adjudicated a neglected child on 03-06-00.
Based on the evidence introduced at trial it is clear that Danielle P. had not achieved the degree of rehabilitation at the time of the filing the petition that would put her in any better position to be an effective parent for Jayell. Specific steps were set for her to facilitate her reunification with her child. She failed to fulfill any of those expectations. As she has exhibited throughout her life Jayell would commence various programs designed to make her a better parent and then fail to follow through. She maintained a transient lifestyle with her whereabouts often unknown. She often rejected the notion that she could benefit from counseling. Dr. Rogers opinion regarding Danielle's resistance to services is particularly compelling because of Jayell's specialized needs. Dr. Rogers also noted that she is capable of rehabilitation but lacks the motivation and persistence. Jayell as previously noted requires a stable home without exposure to change. Danielle has not achieved the level of rehabilitation necessary to furnish such a home.
There is no indication that Shadeem I. has achieved any degree of rehabilitation since the adjudication of neglect.
The court by clear and convincing evidence finds that neither parent has achieved the necessary degree of rehabilitation and therefore finds for the petitioner on Count B 1.
C. No On-Going Parent Child Relationship — General Statutes §17a-112 (j)(D) as to the father. Shadeem I.
This ground alleged by the petitioner requires proof, by clear and convincing evidence that there is no ongoing parent-child relationship, which means "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical emotional moral and educational needs of the child and to allow further time for the establishment or reestablishment of such child would be detrimental to the best interest of the child." CT Page 8745
This statutory definition, as it has been interpreted in case law, requires a finding that "no positive emotional aspects of the relationship survive. "In re Jessica M., 217 Conn. 459 (1991). It is inherently ambiguous when applied to noncustodial parents who must maintain their relationship with their children through visitation." Id., 459; In re Valerie D., 223 Conn. 492. The mere fact that there has been some minimal contact between the parent and the child does not preclude a determination that there is no on going parent-child relationship. In re Juvenile Appeal (Anonymous), 177 Conn. 638.
This court was presented with no evidence of any relationship between Shadeem I. and Jayell. There is no indication that he ever visited her. There is no evidence that she has any idea that he is relative to her. There is no evidence that she has ever acknowledged him as her father.
Given Jayell's need for stability and permanency it would not be in her best interest to continue this matter in order to allow the father an opportunity to develop a relationship. This stems from his own inaction and unwillingness to come forward.
Accordingly the court finds that the petitioner has established this ground by clear and convincing evidence.
D. Failure to Rehabilitate Where Parental Rights Have Been Terminated as toAnother Child General Statutes 17a-112 (j)(E) as to mother Danielle P.
This ground alleged by the petitioner requires proof that the child that is the subject of the petition is under seven years old, that the child was adjudicated a neglected or uncared for child, that the parental rights of the respondent to another child were terminated pursuant to a petition filed by the Commissioner for Children and Families, and that the parent has failed, or is unwilling or unable to achieve, such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child.
At the time of the petition Jayell was two years and six months old. She was adjudicated a neglected child on 03-06-2000. Danielle' parental rights had been terminated with respect to her daughter by the court (Swienton, J) on 08-06-2001 pursuant to a petition filed by Commissioner for Children and Families. This court has already found that Danielle has failed to achieve or is unwilling to achieve the necessary degree of rehabilitation to assume a responsible position in Jayell's life.
The court therefore finds by clear and convincing evidence that the CT Page 8746 petitioner has established this ground in order to terminate Danielle's parental rights relative to Jayell.
 DISPOSITION
General Statute § 17a-112 (k) Criteria:
 The court has found by clear and convincing evidence that the necessary statutory grounds alleged by the petitioner for the termination of Danielle P. and Shadeem I.'s parental rights have been proven. Before making a decision on whether or not to terminate the respondents' parental rights, the court must now consider and make findings on each of the seven criteria set out in General Statute § 17a-112
(j). In re Romance M., 229 Conn. 345 (1994).
These criteria and this court's findings, which have been established by clear and convincing evidence, are as follows:
 (1) The timeliness, nature, and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent."
 As indicated above DCF provided Danielle with several services. They arranged for Danielle to participate in individual and parenting counseling. She did not cooperate. They had her assessed at ADRC and she failed to follow through with the recommended psychological evaluation. DCF provided her with opportunities to visit with Jayell and she failed to show for at least half the visits. If transportation were an issue they would have assisted her. There is no evidence she ever asked.
 As to Shadeem I., DCF was prepared to offer services but he failed to come forward or contact the assigned worker despite numerous calls and letters.
 (2) "Whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant the Federal Child Welfare Act of 1980, as amended."
DCF made reasonable efforts to reunify mother and CT Page 8747 daughter by offering services to Danielle both as a committed child and in Jayell's case. She essentially refused to cooperate. As to the father no efforts were made since he made no attempt to contact DCF. The court found that efforts to reunify with him were no longer appropriate.
 (3) "The terms of any court orders entered into and agreed upon by any individual or agency and the parent, and the extent to which the parties have fulfilled their expectations."
 On 03-06-00 the court issued Specific Steps for Danielle and Shadeem. Danielle has failed to comply with any of the expectations set forth for her primarily due to her unwillingness to follow through with counseling and program recommendations. Shadeem failed to complete or accomplish any of the expectations.
 (4) "The feelings and emotional ties of the child with respect to the parents, any guardians of his person and any person who has exercised physical care custody or control of the child for at least one year and with whom the child has developed significant emotional ties."
 Based on Dr. Rogers evaluation there appears to no bond between Jayell and the respondent mother. No evidence was offered as to the nature of the relationship between Jayell and her present caretakers. No evidence was offered as to the ties between Jayell and the prospective adoptive mother. Jayell does not know her father.
 (5) "The Age of the Child"
Jayell is three years old.
(6) "The effort of the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return to his home in the foreseeable future including but not limited (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parentCT Page 8748 provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact with the guardian or other custodian of the child."
 Danielle has made no effort to adjust her circumstances or conduct to allow reunification with Jayell. She has refused services. She has failed to contact DCF. She has failed to keep DCF aware of her whereabouts. She has not visited regularly. She has not made attempts to see or communicate with Jayell.
 Shadeem has been whereabouts unknown and has not been in contact with DCF. He has made no attempt to contact or visit with Jayell.
 (7) "The extent to which a parent has been prevented from maintaining a meaningful relationship by the unreasonable act of any other person or by the economic circumstances of the parent."
 Danielle did not face any unreasonable interference from any person or economic circumstance preventing her from establishing or maintaining a meaningful relationship with her daughter. Her inability or unwillingness to care for Jayell or to reunite with her stem from her own actions. Since Jayell was removed she has been provided the assistance of counsel at state expense. She was offered services in her own case as well as her daughters, which probably would have led to reunification, had she taken advantage of them. The father was not prevented through any act or conduct of any person from establishing such a relationship.
A. Best Interests of the Child
The court must now address the issue of whether termination of parental rights is in the best interest of the child. This is part of the dispositional phase of a termination proceeding In re Valerie D.223 Conn. 511
The court finds that termination is in the best interest of Jayell. The respondent has not made any meaningful effort to rehabilitate herself. She has no bond with Jayell. Jayell is a child with specialized needs in need of services from a variety of therapists and programs. Danielle has CT Page 8749 demonstrated an aversion to seeking and following through with treatment protocols. Jayell has been in three placements during her life. She needs stability. She needs permanency. Neither Danielle nor Shadeem have shown any interest in or ability to provide those qualities. Her maternal aunt has expressed a willingness to adopt and has been approved as an adoption resource. The court concludes, from the clear and convincing evidence that it is Jayell's best interest to have her parental rights terminated.
 CONCLUSION
Based upon the foregoing findings and having considered all of the evidence, statutory considerations and having found by clear and convincing evidence that grounds exist for termination of parental rights. The court further finds upon all the facts and circumstances presented that it is in the child's best interest to terminate the parental rights of Danielle P. and Shadeem I. Accordingly, it is hereby terminate their parental rights to Jayell.
It is further ordered that Commissioner for Children and Families is appointed statutory parent for Jayell P. The Commissioner is to file with the court no later than thirty days following the date of judgement, a written report toward a permanent plan for the child
The court further finds that the Department of Children and Families has made reasonable efforts to effectuate their permanency plan.
Dannehy, J